# Illinois Official Reports

## Appellate Court

---

### *Fuqua v. SVOX AG*, 2014 IL App (1st) 131429

---

| | |
|---|---|
| Appellate Court Caption | KURT FUQUA, Plaintiff-Appellant, v. SVOX AG; SVOX USA, INC.; NUANCE COMMUNICATIONS, INC.; VOLKER JANTZEN; EUGEN STERMETZ; MARTIN REBER; ERIC LEHMANN; and THOMAS SOSEMAN, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket Nos. 1-13-1429, 1-13-1540 cons. |
| Filed | June 9, 2014 |
| Rehearing denied | July 1, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's order granting defendants' motion to stay litigation and compel arbitration of a dispute arising from plaintiff's action challenging the termination of his employment was affirmed, notwithstanding his contention that the arbitration clause of his employment contract was procedurally and substantively unconscionable, since the parties bargained over the terms of the clause before it was executed, their relative bargaining power was not vastly unequal, and plaintiff negotiated and requested some of the terms that he later claimed were inequitable. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-3607; the Hon. John C. Griffin, Judge, presiding. |
| Judgment | Affirmed in part; cause remanded with directions. |

Counsel on
Appeal

Moran Law Group, of Chicago (John Thomas Moran, Jr., of counsel),
for appellant.

Littler Mendelson, P.C., of Chicago (John A. Ybarra, Darren M.
Mungerson, and Amanda E. Inskeep, of counsel), for appellee SVOX
AG, SVOX USA, Inc., and Nuance Communications, Inc.

Konicek & Dillon, P.C., of Geneva (Daniel F. Konicek and Michael J.
Corsi, of counsel), for appellee Thomas Soseman.

Panel

JUSTICE CUNNINGHAM delivered the judgment of the court, with
opinion.
Presiding Justice Connors and Justice Delort concurred in the
judgment and opinion.

## OPINION

¶ 1    This interlocutory appeal arises from a March 7, 2013 order entered by the circuit court of Cook County which granted the motion to stay litigation and compel arbitration and the motion to lift the stay of arbitration filed by defendants-appellees SVOX AG, SVOX USA, Inc. (SVOX USA), and Nuance Communications, Inc. (Nuance) (collectively, the SVOX defendants); and granted the motion to dismiss filed by defendant-appellee Thomas Soseman (Soseman). This appeal also arises from a May 7, 2013 order which denied the motion for reconsideration filed by plaintiff-appellant Kurt Fuqua (Fuqua). On appeal, Fuqua argues that: (1) the circuit court erred in granting the SVOX defendants' motion to lift the stay of arbitration; (2) the circuit court erred in granting the SVOX defendants' motion to stay litigation and compel arbitration; and (3) the circuit court erred in granting Soseman's motion to dismiss. For the following reasons, we affirm in part and reverse in part the judgment of the circuit court of Cook County.

¶ 2                                BACKGROUND

¶ 3    The facts of this case are lengthy and complex. In the interest of clarity, we present only the facts that are pertinent to our resolution of the case. Fuqua is a computational linguist who has created numerous inventions in the field of computational linguistics. SVOX USA is a wholly owned subsidiary of SVOX AG, a foreign corporation.[1] At the time of the dispute between the parties, SVOX USA was a Delaware corporation located and doing business in Illinois. SVOX USA is a technology services company that researches and develops

---

[1]On June 16, 2011, Nuance acquired SVOX AG and SVOX USA.

text-to-speech technology. On December 23, 2008, Fuqua was offered an employment position with SVOX USA and was asked to sign an employment agreement. Fuqua and SVOX USA negotiated some of the terms of the agreement, and on January 28, 2009, the employment agreement was executed. The employment agreement contained an arbitration clause, which states, in pertinent part:

> "16. Arbitration. Any dispute or controversy arising under or in connection with this Agreement or any other dispute concerning [Fuqua's] employment with [SVOX USA] *** shall be settled exclusively by arbitration, conducted before a single, mutually agreed upon arbitrator or, if no such single arbitrator can be mutually agreed upon, then before a panel of three arbitrators (with one arbitrator to be chosen by each party and the third arbitrator to be chosen by agreement of the first two), sitting in a location selected by mutual agreement within the City of Chicago, Illinois in accordance with the rules for commercial arbitration of the American Arbitration Association then in effect. Judgment may be entered on the arbitrator's award in any court having jurisdiction. Notwithstanding the agreement to arbitrate such disputes and controversies, *Either party* shall be entitled to enforce, in any court of competent jurisdiction, Fuqua's compliance with any restrictive covenant or confidentiality provision contained in this Agreement to the fullest extent permitted by law by seeking any remedy available at law or in equity, including but not limited to a temporary restraining order, injunction, and specific performance, without having to arbitrate and without need to post a bond to do so." (Emphasis added.)

Notably, Fuqua requested that the phrase "Either party" be included in the arbitration clause as a replacement for the term "Employer" in order to make the restrictive covenant provision "symmetric."

¶ 4      On February 1, 2009, Fuqua began his employment as vice president–professional services for SVOX USA. In October 2009, SVOX USA decided to terminate Fuqua's employment and he was given 90 days' notice of his termination. On December 8, 2009, Fuqua filed a demand for arbitration with the American Arbitration Association (AAA), alleging, among other things, breach of contract and unauthorized withholding of wages. On January 3, 2010, Fuqua filed a second demand for arbitration with a claim amount of $10,000 alleging breach of contract and seeking payment of funds owed. Both arbitration demands were filed in accordance with the rules under the "Employment: Promulgated Plans" (employment rules) of the AAA. On February 10, 2010, SVOX USA filed a complaint for injunctive relief in the circuit court of Cook County against Fuqua. The complaint alleged that Fuqua refused to return SVOX computer equipment and software, which contained confidential and proprietary information. On February 11, 2010, SVOX USA's complaint was voluntarily dismissed. SVOX USA then refiled its complaint in the circuit court of Lake County. On March 18, 2010, SVOX USA's Lake County complaint was voluntarily dismissed. The AAA then consolidated Fuqua's arbitration demands.

¶ 5      On April 6, 2010, SVOX USA filed an answer and counterclaims to Fuqua's arbitration demand. SVOX USA also filed a motion requesting that the AAA determine whether the employment rules or the commercial arbitration rules (commercial rules) apply to the arbitration between the parties. On July 7, 2010, AAA Arbitrator Timothy Klenk (Arbitrator Klenk) issued an order which determined that the commercial rules would apply to the arbitration between the parties. Applying the AAA rules, Arbitrator Klenk found that

although the employment agreement contains a "standardized arbitration clause" which normally triggers the employment rules, in this case the commercial rules apply because the agreement was an "individually-negotiated employment agreement." Arbitrator Klenk's finding was significant because under the commercial rules, Fuqua and SVOX USA would be responsible for splitting the cost of arbitration whereas under the employment rules, it would be much less expensive for Fuqua to pursue arbitration. Notably, Arbitrator Klenk stated that he was troubled by the potential cost to Fuqua if the commercial rules applied. However, Arbitrator Klenk extended multiple opportunities to Fuqua to present legal and factual support to demonstrate that his financial position would make it burdensome for him to pay half the arbitration costs. Arbitrator Klenk ultimately opined that Fuqua did not meet his burden of establishing financial inability to meet his obligations under the commercial rules.

¶ 6        On or around August 9, 2011, Fuqua filed a complaint in the United States District Court for the Northern District of Illinois against the SVOX defendants, Soseman, Volker Jantzen (Jantzen), Eugen Stermetz (Stermetz), Martin Reber (Reber), and Eric Lehmann (Lehmann) (collectively, the defendants). On March 12, 2012, the district court ruled on Fuqua's complaint in a memorandum opinion and order. The district court noted that Fuqua's complaint alleged violations of the American Reinvestment and Recovery Act of 2009 (ARRA) and violations of state law. The district court also noted that the defendants filed a motion to dismiss Fuqua's complaint. The district court dismissed Fuqua's ARRA claim with prejudice. Because the district court dismissed the only federal law claim in the complaint, the court declined to exercise supplemental jurisdiction over Fuqua's state law claims and the state law claims were stricken without prejudice to be refiled in state court.

¶ 7        On April 4, 2012, Fuqua filed a complaint in the circuit court of Cook County against the defendants. Fuqua's complaint alleged breach of contract, retaliatory discharge, and violations of the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et seq.* (West 2008)), the Illinois Whistleblower Act (Whistleblower Act) (740 ILCS 174/1 *et seq.* (West 2008)), the Illinois Employee Patent Act (Employee Patent Act) (765 ILCS 1060/1 *et seq.* (West 2008)), and the Illinois Personnel Record Review Act (820 ILCS 40/1 *et seq.* (West 2008)). On April 13, 2012, Fuqua filed a revised motion to stay arbitration pursuant to sections 1 and 2(b) of the Illinois Uniform Arbitration Act (Uniform Arbitration Act) (710 ILCS 5/1, 2(b) (West 2008)).

¶ 8        Instead of filing an answer to Fuqua's motion to stay arbitration, on April 25, 2012, the defendants filed a notice of removal to the United States District Court for the Northern District of Illinois, on the basis of diversity jurisdiction. Additionally, on April 25, 2012, the defendants' notice of removal to federal court was filed in the circuit court of Cook County. Todd Church (Church), counsel for the SVOX defendants, executed a signed declaration (Church declaration) which stated that a "notice to adverse party of notice of removal" was hand-delivered to Fuqua's counsel by Velocity Courier on April 25, 2012. According to the Church declaration, the delivery tracking log of Velocity Courier shows that the notice to adverse party was delivered at 3:46 p.m. on April 25, 2012. On that same day, counsel for the SVOX defendants sent a letter to the presiding judge in the Cook County case informing him of the removal to federal court. The letter notes that Fuqua's counsel was copied. However, the record contains affidavits executed by Fuqua and Fuqua's counsel which state that they were not served with the notice to adverse party on April 25, 2012, as the letter from the

SVOX defendants seems to indicate and did not become aware of the removal until April 26, 2012.[2]

¶ 9   On April 26, 2012, the circuit court granted Fuqua's motion to stay arbitration. In the circuit court's order, it stated "[d]efendant's [*sic*] notice of removal has not been stamped by the clerk of the Northern District of Illinois and this court continues to retain jurisdiction." Litigation then proceeded in the Northern District of Illinois. On August 22, 2012, the district court ruled on a motion filed by Fuqua to remand the case to state court. The district court found that it did not have diversity jurisdiction over the matter because Soseman and Fuqua were both residents of Illinois. Because diversity was the only jurisdictional basis on which the defendants removed the matter to federal court, the district court remanded the remainder of Fuqua's claims to state court.

¶ 10   On September 20, 2012, Fuqua filed an amended complaint in the circuit court of Cook County alleging similar claims as his original circuit court complaint. On October 18, 2012, the SVOX defendants filed a motion to stay litigation and compel arbitration, and a motion to lift the stay of arbitration that was ordered on April 26, 2012. On January 10, 2013, Fuqua filed a combined response to the SVOX defendants' motions. On January 24, 2013, the SVOX defendants filed a reply in support of their motion to lift the stay of arbitration. On February 27, 2013, Fuqua filed a surresponse to the SVOX defendants' motions.

¶ 11   On March 7, 2013, the circuit court granted the SVOX defendants' motion to lift the stay of arbitration and motion to stay litigation and compel arbitration. Additionally, the circuit court granted Soseman's motion to dismiss with prejudice. Initially, the circuit court found that its April 26, 2012 order, which granted the stay of arbitration, was entered improperly and without jurisdiction. The circuit court found that the defendants' notice of removal divested the court of jurisdiction and it was unable to enter the April 26, 2012 order that it purportedly entered. The court noted that on April 25, 2012, the Northern District of Illinois assigned a case number to the notice of removal and that the defendants hand-delivered to Fuqua the notice to adverse party of notice of removal. As such, the circuit court found that the April 25, 2012 notice of removal divested the court of jurisdiction. Also, the circuit court stated that it would not consider the arguments in Fuqua's surresponse because he did not seek leave to file the surresponse. Further, the circuit court found that the arbitration clause was enforceable because it was not procedurally or substantively unconscionable. Additionally, the circuit court found that the defendants did not waive their right to arbitrate and that the claims against Soseman must be dismissed because Soseman is afforded a qualified privilege as an attorney for the defendants.

¶ 12   On April 5, 2013, Fuqua filed a notice of appeal of the circuit court's March 7, 2013 order. On that same day, he filed a motion for reconsideration of the circuit court's March 7, 2013 order. On April 24, 2013, the circuit court held a hearing on Fuqua's motion for reconsideration. At the hearing, the circuit court asked Fuqua's counsel about the notice of

---

[2]The affidavits were attached to a surresponse filed by Fuqua on February 27, 2013. In the circuit court's order from which Fuqua appeals, the court stated that it did not consider the arguments presented in Fuqua's surresponse because Fuqua did not request leave to file the surresponse. However, the circuit court was aware of the arguments that were presented in the surresponse and the surresponse was included in the record on appeal to this court. Therefore, we may reference the affidavits attached to the surresponse.

appeal. Fuqua's counsel stated "my associate filed it. It's premature. It doesn't vacate the jurisdiction of the court on the motion." On May 7, 2013, the circuit court denied Fuqua's motion for reconsideration. Also on May 7, 2013, Fuqua filed a request for preparation of the record on appeal, which referenced April 5, 2013 as the date the notice of appeal was filed. On May 14, 2013, Fuqua filed a notice of interlocutory appeal of the circuit court's May 7, 2013 order which denied Fuqua's motion for reconsideration. The May 14, 2013 appeal was filed pursuant to Illinois Supreme Court Rule 307 (eff. Feb. 26, 2010). On May 23, 2013, Fuqua filed a motion to consolidate the April 5, 2013 appeal and the May 14, 2013 appeal. On June 12, 2013, this court granted Fuqua's motion to consolidate the appeals.

¶ 13                                                    ANALYSIS

¶ 14        As a preliminary matter, we must determine whether we have jurisdiction to consider Fuqua's appeals. Rule 307(a)(1) states that an appeal may be taken to this court from an interlocutory order that grants, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction. Ill. S. Ct. R. 307(a)(1) (eff. Feb. 26, 2010); *Craine v. Bill Kay's Downers Grove Nissan*, 354 Ill. App. 3d 1023, 1025 (2005). An order compelling arbitration is an injunctive order and is thus considered to be an appealable interlocutory order. *Craine*, 354 Ill. App. 3d at 1025. Further, this court has applied the following interpretation in determining whether an interlocutory order is appealable under Rule 307:

> "Rule 307(a)(1) permits interlocutory appeals from four types of orders: (1) orders that deny (*i.e.*, refuse) injunctions; (2) orders that create (*i.e.*, grant) injunctions; (3) orders that change the effects of (*i.e.*, modify or dissolve) existing injunctions; and (4) orders that perpetuate the effects of (*i.e.*, refuse to modify or to dissolve) existing injunctions. [Citation.]" *Id.*

¶ 15        In this case, the circuit court's March 7, 2013 order was an injunctive order because, among other things, it granted the SVOX defendants' motion to stay litigation and compel arbitration. The circuit court's May 7, 2013 order refused to modify an existing injunction by denying Fuqua's motion for reconsideration of the March 7, 2013 order. Thus, both orders are appealable under Rule 307(a)(1). Further, " '[t]he sole issue before the appellate court on an interlocutory appeal [of this type of order] is whether a sufficient showing was made to sustain the order of the trial court denying the motion to compel arbitration.' " *Menard County Housing Authority v. Johnco Construction, Inc.*, 341 Ill. App. 3d 460, 463 (2003) (quoting *Yandell v. Church Mutual Insurance Co.*, 274 Ill. App. 3d 828, 830-31 (1995)). Accordingly, this court applies the abuse of discretion standard of review in evaluating this appeal. *Menard*, 341 Ill. App. 3d at 463.

¶ 16        We note that the SVOX defendants[3] argue that this court does not have jurisdiction to consider Fuqua's appeals because Fuqua did not timely comply with the requirements of filing an appeal as mandated by Rule 307. Specifically, the SVOX defendants highlight that at the hearing on the motion for reconsideration, Fuqua's counsel stated that the April 5,

---

[3]In this case, the SVOX defendants have filed a brief on appeal and Soseman has individually filed a brief on appeal. Defendants Jantzen, Stermetz, Reber, and Lehmann have not filed a brief or presented any arguments on appeal. The SVOX defendants have presented many more arguments than Soseman. In the interest of clarity, we will respond primarily to the SVOX defendants' arguments and will discuss Soseman's arguments when appropriate.

2013 notice of appeal was "premature." Also, the SVOX defendants point out that Fuqua did not file the record, nor did he file the docketing statement, pay the filing fee, or file an appellate brief, within the time requirements of Rule 307. However, as Fuqua points out, even in cases involving interlocutory appeals pursuant to Rule 307, the only jurisdictional step is filing the notice of appeal and other deficiencies, such as failing to timely file the record, will not divest this court of jurisdiction. *Venturi v. Bulk Petroleum Corp.*, 70 Ill. App. 3d 967, 970 (1979); see also *Greco v. Coleman*, 127 Ill. App. 3d 806, 808-10 (1984). Thus, despite the comments made by Fuqua's counsel at the hearing on the motion for reconsideration, the record shows that the April 5, 2013 notice of appeal was properly and timely file stamped by the circuit court. Because the April 5, 2013 notice of appeal was filed within 30 days of the March 7, 2013 order, the notice of appeal was timely. Therefore, we have jurisdiction to consider Fuqua's arguments on appeal pursuant to Rule 307.

¶ 17   We next determine whether the circuit court erred in granting the SVOX defendants' motion to lift the stay of arbitration.

¶ 18   On April 25, 2012, the defendants once again filed a notice of removal in order to remove the case from the circuit court to the federal district court. On April 26, 2012, the circuit court granted Fuqua's motion to stay arbitration. The circuit court also found that "[d]efendant's [*sic*] notice of removal has not been stamped by the clerk of the Northern District of Illinois and this court continues to retain jurisdiction." In its March 7, 2013 order, the circuit court granted the SVOX defendants' motion to lift the stay of arbitration, effectively overruling its April 26, 2012 order, because the court found that it did not have jurisdiction when it entered its April 26, 2012 order. The circuit court found that the defendants' April 25, 2012 notice of removal divested the circuit court of jurisdiction and it should not have entered the April 26, 2012 order.

¶ 19   On appeal, Fuqua argues that the circuit court's March 7, 2013 order, which granted the SVOX defendants' motion to lift the stay of arbitration and motion to stay litigation and compel arbitration, was in error. He contends that the court *did* have jurisdiction to enter its April 26, 2012 order. Fuqua asserts that the circuit court is not divested of jurisdiction until removal is *perfected*, regardless of when the notice of removal was filed. Fuqua contends that as of April 26, 2012, the defendants had not yet perfected their removal because they had not complied with all the requirements set forth in 28 U.S.C. § 1446(d). Namely, Fuqua claims that the defendants did not provide written notice to him of the notice of removal by the time the circuit court entered its April 26, 2012 order. Fuqua argues that because the defendants' removal was not perfected as of April 26, 2012, the circuit court had jurisdiction to enter its order which stayed arbitration. Therefore, Fuqua argues that in its March 7, 2013 order, the circuit court erred by granting the SVOX defendants' motion to lift the stay of arbitration.

¶ 20   In response, the SVOX defendants argue that the circuit court's March 7, 2013 order was proper, and that the court properly granted their motion to lift the stay of arbitration. Specifically, the SVOX defendants argue that the circuit court was correct in finding that it did not have jurisdiction to enter its April 26, 2012 order. The SVOX defendants point out that 28 U.S.C. § 1446(d) required them to file a notice of removal, and provide Fuqua with written notice of the removal. The SVOX defendants assert that they complied with all the requirements of 28 U.S.C. § 1446(d) before the circuit court entered its April 26, 2012 order. Thus, they contend that the circuit court was divested of jurisdiction and was unable to enter its April 26, 2012 order. In support of their argument, the SVOX defendants point out the

following facts: the notice of removal was file stamped by the circuit court on April 25, 2012; on that same day the defendants sent a letter to the presiding judge in the circuit court of Cook County informing him of the removal, and they copied Fuqua's counsel on the letter; and the Church declaration states that the Velocity Courier tracking information showed that the notice to adverse party of notice of removal was hand-delivered to Fuqua's counsel at 3:46 p.m. on April 25, 2012. Therefore, the SVOX defendants argue that the circuit court's March 7, 2013 order was proper.

¶ 21    The resolution of this issue hinges on whether the circuit court had jurisdiction to enter its April 26, 2012 order. In order to answer this question, we must determine whether the defendants perfected their notice of removal before the circuit court entered its April 26, 2012 order. The removal procedure is governed by section 1446(d), which states as follows:

> "(d) *** Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d) (2006).

¶ 22    "When a petition for removal has been filed in Federal district court *and other requirements of [section 1446(d)] have been met*, the State court loses jurisdiction to proceed further until the case is remanded." (Emphasis added.) *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 154 (1992) (citing *Eastern v. Canty*, 75 Ill. 2d 566, 571 (1979)).

¶ 23    We note that there is little Illinois authority addressing whether removal is perfected in a situation similar to the one in this case. In this case, the circuit court entered an order after the notice of removal was filed, but it is unclear from the record whether Fuqua was given written notice of the removal *before* the circuit court entered its order. As Fuqua points out, our supreme court has held:

> "Under [section 1446(d)] the filing of a petition for removal must be followed promptly by written notice to all adverse parties and the filing of a copy of the petition in the State court. As noted previously, no question can be raised here as to the latter requirement. With respect to the requirement of prompt written notice to the plaintiff, however, the petition for removal does not allege, nor does the record show, the giving of such notice, and language in [citation], and other decisions suggest[ ] that, like failure to file a copy of the petition in State court, lack of prompt notice to adverse parties also amounts to a failure to perfect removal. [Citations.]" *Eastern*, 75 Ill. 2d at 571-72.

¶ 24    Thus, pursuant to *Eastern*, if written notice of the removal is not given to the adverse party then the removal is not perfected. Accordingly, if the defendants in this case did not provide written notice of the removal to Fuqua *before* the circuit court entered its April 26, 2012 order, then the removal was not perfected and the circuit court was not divested of jurisdiction.

¶ 25    We find further support for this analysis in the decisions of federal district courts. Federal courts across several districts have analyzed similar situations in which it is unclear whether the written notice requirement of section 1446(d) had been satisfied and unclear whether removal had been perfected. The district courts have consistently held that when a defendant makes a good-faith effort to provide the plaintiff with written notice of the removal, *and the plaintiff suffers no prejudice* as a result of the failure of that attempt, then section 1446(d) is

sufficiently satisfied and removal is perfected. (Emphasis added.) *Busby v. Capital One, N.A.*, 759 F. Supp. 2d 81, 85-86 (D.D.C. 2011); *Arnold v. CSX Hotels, Inc.*, 212 F. Supp. 2d 634, 637 (S.D. W. Va. 2002); *L&O Partnership No. 2 v. Aetna Casualty & Surety Co.*, 761 F. Supp. 549, 552 (N.D. Ill. 1991).

¶ 26 In this case, we have competing affidavits and declarations regarding whether the defendants provided written notice of the removal to Fuqua *before* the circuit court entered its April 26, 2012 order. The Church declaration states that Velocity Courier hand-delivered the notice to adverse party to Fuqua's counsel on April 25, 2012. The affidavits executed by Fuqua's counsel state that the notice to adverse party was not received until after the circuit court entered its April 26, 2012 order. There is nothing in the record from Velocity Courier stating to whom the notice of adverse party was delivered, or where the notice to adverse party was placed upon delivery. Based on the information before this court, Velocity Courier could have handed the notice to adverse party to the wrong person, placed it in the mail room among other mail, or taken any number of actions that would have delayed the notice reaching Fuqua's counsel. Taking the affidavits and declaration at face value, it seems that Church made a good-faith effort to provide Fuqua's counsel with written notice of the removal, but that the delivery of the written notice was not accomplished until after the circuit court entered its order on April 26, 2012.

¶ 27 Based on the unique facts of this case, Church's good-faith effort in providing Fuqua with written notice of the removal was not enough to perfect the removal. This is because Fuqua certainly suffered prejudice as a result of Church's failed attempt. As noted above, in its March 7, 2013 order, the circuit court found that the notice of removal divested the court of jurisdiction and that the court improperly entered its April 26, 2012 order, which granted Fuqua's motion to stay arbitration. Thus, in its March 7, 2013 order, the circuit court effectively overruled the order that granted Fuqua's earlier motion. This is certainly prejudicial to Fuqua. The circuit court was incorrect in finding that the defendants perfected their removal and complied with all the requirements of section 1446(d). On the other hand, if in its March 7, 2013 order the circuit court had found that the removal *was not* perfected on April 25, 2012 due to lack of written notice, then the court would likewise have found that it *was not* divested of jurisdiction to enter its April 26, 2012 order. In other words, if the circuit court had found that Fuqua was not provided with written notice of the removal, then it would also have found that the court had jurisdiction to enter its April 26, 2012 order. Accordingly, we find that the circuit court had jurisdiction to enter its April 26, 2012 order. Thus, we reverse the portion of the circuit court's March 7, 2013 order that granted the SVOX defendants' motion to lift the stay of arbitration and which vacated the April 26, 2012 order.

¶ 28 Although we reverse a portion of the circuit court's March 7, 2013 order, that reversal does not invalidate the remainder of the circuit court's order of that date. Indeed, we may affirm the circuit court's judgment on any basis supported by the record, regardless of the circuit court's reasoning. *In re Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 33; *Christian v. Lincoln Automotive Co.*, 403 Ill. App. 3d 1038, 1044 (2010); *Heinz v. County of McHenry*, 122 Ill. App. 3d 895, 898 (1984). Thus, we examine the other issues in this case in totality in determining whether the circuit court erred in granting the SVOX defendants' motion to stay litigation and compel arbitration.

¶ 29    We note that Fuqua argues that the SVOX defendants' motion to lift the stay of arbitration, and motion to stay litigation and compel arbitration, were actually untimely motions to reconsider the circuit court's April 26, 2012 order. As such, Fuqua argues that the circuit court improperly considered those motions. We have already reversed the portion of the circuit court's March 7, 2013 order which granted the SVOX defendants' motion to lift the stay of arbitration, and need not address that further. However, regarding the motion to stay litigation and compel arbitration, we do not agree, as Fuqua contends, that it is actually a motion to reconsider. On September 19, 2012, after this case was remanded to the circuit court from the federal district court, the circuit court granted Fuqua leave to file an amended complaint. The circuit court also gave the defendants until October 19, 2012 to answer or otherwise plead. On September 20, 2012, Fuqua filed an amended complaint. On October 18, 2012, the SVOX defendants filed the motion to stay litigation and compel arbitration. The SVOX defendants' motion was filed in response to Fuqua's amended complaint and pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)), which governs motions to dismiss. Thus, the circuit court properly considered the SVOX defendants' motion to stay litigation and compel arbitration.

¶ 30    Fuqua next argues that the circuit court erred in granting the SVOX defendants' motion to stay litigation and compel arbitration because the arbitration clause in the employment agreement is unenforceable. Fuqua contends that the arbitration clause is unenforceable because it is procedurally and substantively unconscionable. Fuqua presents many reasons as to why the arbitration clause is procedurally and substantively unconscionable. First, Fuqua argues that it would be extremely expensive for him to pursue arbitration. He claims that he has already been billed $16,469.25 and will be required to advance at least $23,619.25 to arbitrate. Fuqua claims that after he was terminated, he was not employable in his field due to the noncompete clause in the employment agreement, and thus is unable to afford the costs of arbitration. Also, Fuqua argues that the arbitration clause is unconscionable because of the carve-out provision that works solely against him. Specifically, Fuqua highlights the provision in the arbitration clause that states, "[e]*ither party* shall be entitled to enforce, in any court of competent jurisdiction, [Fuqua's] compliance with any restrictive covenant or confidentiality provision contained in this Agreement *** without having to arbitrate." (Emphasis added.) Fuqua argues that the carve-out provision is an illusory promise because there is no legitimate reason for him to seek to enforce his own compliance with the noncompetition and confidentiality provisions. Also, Fuqua claims that the parties agreed to arbitrate all claims, but the carve-out provision allows SVOX USA to enforce the noncompetition and confidentiality provisions in court. Fuqua argues that this shows a lack of mutuality between the parties. As such, Fuqua asserts that the carve-out provision makes the arbitration clause unconscionable.

¶ 31    Additionally, Fuqua argues that the application of the AAA's commercial rules to the arbitration renders the arbitration clause unconscionable. Fuqua points out that he originally filed a request for arbitration under the employment rules, which allocate fees and costs differently than the commercial rules. However, in response to a motion filed by SVOX USA, Arbitrator Klenk ruled that the commercial rules would apply to the arbitration. Fuqua claims that the commercial rules are designed for arbitration of disputes between businesses, not for claims arising out of employment agreements. Also, he claims that the arbitration clause does not highlight the applicability of the commercial rules. Fuqua contends that he

- 10 -

was completely surprised by the fact that the commercial rules could apply, and he cannot afford to pursue arbitration under the commercial rules. Thus, Fuqua argues that the arbitration clause in the employment agreement is unenforceable and unconscionable, and the circuit court erred in granting the SVOX defendants' motion to stay litigation and compel arbitration.

¶ 32    In response, the SVOX defendants argue that in its March 7, 2013 order, the circuit court properly granted their motion to stay litigation and compel arbitration. The SVOX defendants argue that the arbitration clause in the employment agreement is valid and enforceable under the Uniform Arbitration Act and the Federal Arbitration Act (9 U.S.C. § 2 (2006)). The SVOX defendants point out that the arbitration clause clearly states "[a]ny dispute or controversy arising under or in connection with this Agreement or any other dispute concerning [Fuqua's] employment with [SVOX USA] *** shall be settled exclusively by arbitration." The SVOX defendants contend that all of Fuqua's claims in this case relate to his employment and circumstances of his termination, which fall directly under the arbitration clause. Also, the SVOX defendants assert that the arbitration clause meets all the requirements of a valid and enforceable contract under Illinois law. In support of this argument, the SVOX defendants point out that the parties negotiated terms of the employment agreement, and there was an offer and acceptance of employment as evidenced by the signed agreement. The SVOX defendants assert that the mutual promises in the arbitration clause and Fuqua's employment constitute sufficient consideration. Also, the SVOX defendants contend that the terms of the arbitration clause are clear and definite. Thus, the SVOX defendants argue that the arbitration clause is enforceable.

¶ 33    Additionally, the SVOX defendants argue that the arbitration clause is not procedurally or substantively unconscionable. The SVOX defendants contend that under Illinois law, procedural unconscionability is based on impropriety *during the process of forming the contract*. Thus, the SVOX defendants assert that this court should evaluate the issue of procedural unconscionability based only on the parties' conduct when the employment agreement was being negotiated and executed. Further, the SVOX defendants argue that the arbitration clause was not difficult to find, read, or comprehend, and that Fuqua had an opportunity to negotiate terms of the arbitration clause and employment agreement. As such, the SVOX defendants contend that there was not vastly unequal bargaining power between SVOX USA and Fuqua. Also, the SVOX defendants assert that Arbitrator Klenk's application of the commercial rules does not render the arbitration clause unconscionable because Arbitrator Klenk made that determination after carefully considering the entire employment agreement and the AAA rules. Therefore, the SVOX defendants argue that the arbitration clause is not procedurally unconscionable.

¶ 34    Moreover, the SVOX defendants argue that the arbitration clause is not substantively unconscionable. The SVOX defendants assert that substantive unconscionability is based on whether the terms of a contract are so one-sided as to render the contract unconscionable. The SVOX defendants claim that a majority of Fuqua's argument is based on the fairness of applying the commercial rules to the arbitration clause. However, the SVOX defendants contend that it is not the proper function of the appellate court to review Arbitrator Klenk's interlocutory arbitration order. Also, the SVOX defendants argue that the terms of the arbitration clause were not unfair. The SVOX defendants point out that before making his determination, Arbitrator Klenk gave Fuqua multiple opportunities to present evidence of

financial hardship, but Fuqua never presented adequate evidence in support of the argument for financial hardship that he is now making. Also, the SVOX defendants note that Fuqua argues that the arbitration clause lacks mutuality because the carve-out provision only benefits the SVOX defendants. However, the SVOX defendants argue that the carve-out provision only governs a narrow classification of disputes and the majority of disputes arising under the employment contract must be arbitrated. Therefore, the SVOX defendants argue that the arbitration clause is not substantively unconscionable. Accordingly, the SVOX defendants argue that in its March 7, 2013 order, the circuit court did not err in granting the SVOX defendants' motion to stay litigation and compel arbitration.

¶ 35    The Uniform Arbitration Act is applicable to this case. The Uniform Arbitration Act states as follows:

> "§ 1. Validity of arbitration agreement. A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract ***." 710 ILCS 5/1 (West 2008).

It is well established that arbitration agreements are evaluated under the same standards as any other contract. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 149-50 (2006). The elements of an enforceable contract include offer, acceptance and consideration. *All American Roofing, Inc. v. Zurich American Insurance Co.*, 404 Ill. App. 3d 438, 449 (2010). Consideration is a bargained-for exchange where one party receives a benefit or the other party suffers a detriment. *Id.*

¶ 36    The court decides as a matter of law whether a contract clause is unconscionable. *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 99 (2006). "Unconscionability can be either 'procedural' or 'substantive' or a combination of both." *Id.* Procedural unconscionability occurs when a term is so difficult to find, read, or understand that it cannot be fairly said that the plaintiff was aware that he was agreeing to the term. *Id.* at 100. In determining whether a term is procedurally unconscionable, the court considers a lack of bargaining power. *Id.* Substantive unconscionability occurs when terms are inordinately one-sided in one party's favor. *Id.* " 'Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed.' " *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 28 (2006) (quoting *Maxwell v. Fidelity Financial Services, Inc.*, 907 P.2d 51, 58 (Ariz. 1995)).

¶ 37    We find that the SVOX defendants have the more reasonable argument and interpretation of applicable legal principles. Thus, pursuant to section 51 of the Uniform Arbitration Act, the arbitration clause in this case is valid and enforceable. The arbitration clause is supported by the offer of employment to Fuqua, Fuqua's acceptance of the offer, and the consideration of Fuqua's employment and the promise to resolve any employment disputes through arbitration. Thus, the arbitration clause can only be invalid or unenforceable if there are grounds for revocation of a contract. The grounds for revocation at issue are procedural and substantive unconscionability.

¶ 38    In this case, the arbitration clause was not procedurally unconscionable because it was easy to find within the employment agreement, and it was clear and easy to understand. Fuqua claims that he was unaware that the commercial rules could apply and that he only anticipated arbitration under the employment rules. However, the arbitration clause makes no

mention whatsoever of the employment rules. Rather, the arbitration clause states that *any* disputes arising in connection with the employment agreement or Fuqua's employment shall be settled by arbitration "in accordance with the rules for commercial arbitration of the [AAA] then in effect." This clause does not instruct whether the employment rules or commercial rules will apply, but rather states that the *AAA rules* will determine whether the employment rules or commercial rules will apply. That is precisely what happened. Arbitrator Klenk applied the appropriate AAA rules in reaching a conclusion regarding whether the employment rules or commercial rules applied. Fuqua negotiated with SVOX USA regarding the terms of the arbitration clause and even changed some of the language of the arbitration clause. So, he was an active participant in the negotiations and the terms of the contract. Yet he made no attempt to amend the clause pertaining to the rules of arbitration. According to Arbitrator Klenk's finding, the rules of the AAA dictate that the commercial rules apply to the arbitration between the parties in this case. Understandably, Fuqua is upset because Arbitrator Klenk's determination was unfavorable to him from a financial point of view. However, that cannot be the basis for nullifying a clause that he negotiated and agreed to. At the time the employment agreement was executed, the relative bargaining power between SVOX USA and Fuqua was not vastly unequal. Arbitrator Klenk's finding was made after the arbitration clause was negotiated, agreed to, and executed. Thus, procedural unconscionability is not a factor under these facts. Accordingly, the arbitration clause was not procedurally unconscionable.

¶ 39 Likewise, the arbitration clause is not substantively unconscionable. The crux of Fuqua's unconscionability argument is that the cost of arbitration under the commercial rules is financially burdensome, and thus he cannot afford to pursue arbitration. We acknowledge that the allocation of costs between the parties under the commercial rules puts a relatively greater burden on Fuqua than would occur under the application of the employment rules. However, in Arbitrator Klenk's lengthy order, he outlined his reasoning for his ruling. We can find no fault with his reasoning or his ruling. Further, he gave Fuqua an opportunity to present evidence to support his argument of undue financial hardship and Fuqua did not avail himself of the opportunity to do so. It is not this court's prerogative to review Arbitrator Klenk's order in the manner requested by Fuqua. Even if it were, we would have no reason to depart from Arbitrator Klenk's findings. Although Fuqua repeatedly states that it will be expensive for him to pursue arbitration, there is nothing in the record that reflects his financial situation, or supports his argument on that issue.

¶ 40 Similarly, the carve-out provision in the arbitration clause does not render the arbitration clause substantively unconscionable. Fuqua argues that the carve-out provision is unfair and lacks mutuality because he would have no reason to enforce restrictive covenants against himself. However, Fuqua fails to acknowledge that *he negotiated and requested* some of the very terms in the carve-out provision of which he now complains. Indeed, Fuqua requested that the phrase "Either party" be included in the arbitration clause as a replacement for the term "Employer" in order to make the restrictive covenant provision "symmetric." Accordingly, it can be inferred that Fuqua had ample opportunity to object to the carve-out provision and request changes to the terms. His argument when carefully analyzed shows that he successfully negotiated the contract clause that he is now arguing is unfair to him. Thus, the arbitration clause is not substantively unconscionable. Because the arbitration clause is not procedurally or substantively unconscionable, there are no grounds to revoke the valid

and enforceable arbitration clause. Accordingly, in its March 7, 2013 order, the circuit court did not abuse its discretion in granting the SVOX defendants' motion to stay litigation and compel arbitration. We affirm the circuit court's order of March 7, 2013 on that issue.

¶ 41    We note that Fuqua also argues that, in its March 7, 2013 order, the circuit court erred in dismissing the complaint claims against Soseman with prejudice. However, as Soseman points out on appeal, the circuit court dismissed the claims against him based on the rule that an attorney is entitled to qualified immunity for actions taken by a client pursuant to the attorney's advice unless the plaintiff can set forth facts showing actual malice by the attorney. *Schott v. Glover*, 109 Ill. App. 3d 230, 235 (1982). In this case, Fuqua did not allege any facts showing actual malice by Soseman and presented no arguments that overcome an attorney's qualified immunity privilege. Therefore, the circuit court did not abuse its discretion in dismissing the claims against Soseman with prejudice.[4] Accordingly, we affirm the circuit court's order of March 7, 2013 that dismissed the claims against Soseman with prejudice.

¶ 42    For the foregoing reasons, we affirm the circuit court's March 7, 2013 judgment that granted the SVOX defendants' motion to stay litigation and compel arbitration. We affirm the circuit court's March 7, 2013 judgment that dismissed the claims against Soseman with prejudice. We affirm the circuit court's March 7, 2013 judgment that granted the SVOX defendants' motion to lift the stay of arbitration. We affirm the circuit court's May 7, 2013 judgment that denied Fuqua's motion to reconsider the court's grant of the SVOX defendants' motion to lift the stay of arbitration. The matter is remanded with directions to compel arbitration.

¶ 43    Affirmed in part; cause remanded with directions.

---

[4]We are likewise unpersuaded by Fuqua's argument that the SVOX defendants waived the right to arbitrate.